GEORGE B. CARTWRIGHT, APPELLANT, v. THE CANAN-
DAIGUA GAS–LIGHT COMPANY, RESPONDENT.

*Game law — deposit of deleterious substances in a stream or lake — when it is an offense* — 1879, *chap.* 534, *sec.* 25.

The twenty-fifth section of chapter 534 of 1879, entitled "An act for the preservation of moose, wild deer, birds, fish and other game," provides that "no person, association, company or corporation, shall throw or deposit, or permit to be thrown or deposited, any dye-stuff, coal-tar, refuse from gas-houses, saw-dust, lime or other deleterious substance, or cause the same to run or flow, into or upon any of the rivers, lakes, ponds, streams, or any of the bays or inlets adjoining the Atlantic ocean within the limits of this State. Any person who shall violate this section, or any member of any such company, association or corporation, who shall authorize and direct any such violation, shall be guilty of a misdemeanor, and in addition thereto shall be liable to a penalty of fifty dollars for each offense. But this section shall not apply to streams of flowing or tide-water, which constitute the motive power of the machinery of manufacturing establishments where it is absolutely necessary for the manufacturing purposes carried on in such establishments to run the refuse matter and material thereof into such stream."

*Held*, that the word "person" included a corporation, and that a corporation is

liable, in its corporate capacity, to the penalties prescribed for a violation of the provisions of the act.

That it was not intended to make the throwing or depositing of any of the substances named in the act into a stream or lake, without regard to its size, or the quantity of water it contained, an offense; but that to constitute a violation of the act, the quantity of the substances so thrown or deposited in the body of water must be such as to have the effect of destroying the lives of the fish, or of disturbing, in some degree, their habits.

APPEAL from a judgment of the Ontario County Court, reversing a judgment in the plaintiff's favor recovered in a Justice's Court for fifty dollars, being one penalty given by chapter 534 of the Laws of 1879, entitled " An act for the preservation of moose, wild deer, birds, fish and other game."

The only section of the act necessary to be noticed is the twenty-fifth, which is as follows: " No person, association, company or corporation shall throw or deposit, or permit to be thrown or deposited, any dye-stuff, coal-tar, refuse from gas-houses, saw-dust, lime or other deleterious substance, or cause the same to run or flow into or upon any of the rivers, lakes, ponds, streams or any of the bays or inlets adjoining the Atlantic ocean, within the limits of this State. Any person who shall violate this section, or any member of any such company, association or corporation, who shall authorize and direct any such violation shall be guilty of a misdemeanor, and in addition thereto shall be liable to a penalty of fifty dollars for each offense. But this section shall not apply to streams of flowing or tide-water which constitute the motive power of the machinery of manufacturing establishments where it is absolutely necessary for the manufacturing purposes carried on in such establishments to run the refuse matter and material thereof into such stream."

*A. S. Baker*, for the appellant.

*W. H. Adams*, for the respondent.

BARKER, J.:

The defendant's gas factory is located on the bank of a small stream or brook which flows into Canandaigua lake. The refuse substances resulting from a distillation of coal in generating gas by means of pipes and other conduits is carried to, emptied in and mingled with the waters of this stream. The volume of such refuse

matter which has been from time to time cast into this stream cannot be very definitely ascertained from the evidence, but it appears to have varied in quantity and continued for several months prior to the commencement of this action.

This act of the defendant clearly amounts to throwing and depositing in the stream the refuse arising from its manufacture of gas. There has been a literal violation of the restraining clause of the statute. The defendant claims that it is not liable in its corporate capacity for the penalties imposed, for the reason that it is not embraced within the phrase "any person," as used in designating the parties made liable for the payment of the penalties. As corporations, associations and companies are by special designation embraced within the restraining clause, there is no room for doubt that it was the intention of the legislature to impose upon them the pains and penalties of the act if they should be guilty of a violation of its provisions. It has been frequently adjudged in penal statutes that corporations are included within the word "person" where it is manifest that such was the intention of the legislature. (*People* v. *Utica Ins. Co.*, 15 Johns., 358; *La Farge* v. *Exchange Fire Ins. Co.*, 22 N. Y., 352.)

A more doubtful question arises, whether under all the proofs a case has been made out establishing that the defendant has been guilty of violating the meaning and purpose of the statute so as to incur the penalty. There is no evidence, not the least, that the waters of the stream or of Canandaigua lake, into which it flows, have been polluted in such a degree by reason of throwing the refuse matter of the gas factory into the same as to become deleterious and destructive to the life or disturbing to the habits of fish. The proofs presented upon the subject came from the defendant and tended to prove that fish continued to frequent the stream and were not killed or disturbed by reason of permitting the refuse matter to escape therein.

It is manifest that the language of the statute cannot be taken literally, because the throwing or depositing of any of the many substances mentioned into a stream or lake, however small the quantity or large the body of water, would be a technical violation of the language of the statute. To constitute a violation of the statute, the quantity of a material thrown into a body of water

must be such as to have the effect of destroying life or disturbing the habits of fish, in some degree, otherwise the statute would be absurd, harsh and absolutely unnecessary. By the language of the section it is manifest that it was the intention of the legislature that the acts prohibited must be such as to be deleterious in fact ; that is, destructive of the life of fish. The adjective "deleterious," as used at the close of the prohibitory clause, has the effect, and we think such was the intention of the legislature in using the same, to limit and qualify the meaning of the previous general words of the paragraph. The common and generally accepted meaning of the word is, having the power of destroying or extinguishing life ; that which is destructive, poisonous, pernicious ; as deleterious plant or quality. (Webster.)

There is authority for saying that the phrase, as used, has the effect of qualifying the meaning of the previous parts of the sentence to the extent which we have suggested. In an action on a policy of life insurance, the defense rested on an alleged breach of warranty made by the assured in giving a negative answer to the following questions contained in his application : "Have the applicant's parents, uncles, aunts, brothers or sisters been afflicted with consumption, scrofula, insanity, epilepsy, disease of the heart, *or other hereditary diseases ?*" It was held that the word "hereditary" had the effect of limiting and qualifying the word "insanity," as previously used, so that it should have the same meaning as if the word "hereditary" had been inserted immediately preceding the word "insanity," with a view of qualifying and limiting its meaning. (*Peasley* v. *Safety Deposit Life Ins. Co.*, 15 Hun, 227 ; *Newton* v. *Mutual Benefit Life Ins. Co.*, 15 id., 595 ; *Westover* v. *Ætna Life Ins. Co.*, Fourth Dept., unreported.) The word "deleterious" must have some meaning given to it, for it has been used by the legislature in describing the quality of the material which is prohibited from being thrown or deposited in the lakes or streams of the State. It is a maxim in construing penal statutes when general words are used, to restrain their meaning for the benefit of the person against whom the penalty is inflicted. (Dwarris, 736 ; *Hall* v. *Siegel*, 7 Lans., 206.)

It is the duty of courts to so construe statutes as to meet the mischief which the law was intended to remedy. The object and

purpose of this statute is declared in its title ; " for the preservation of fish and other game." Unless some act be done which has the effect in some degree of destroying fish or game, no penalty can be incurred by any one. In commenting upon a statute, penal in its character, EARL, J., said : " It cannot be doubted that the law-makers did not intend that this law should be applied in such cases ; and yet they are within the letter of the law. The law-makers cannot always foresee all the possible applications of the general language they use ; and it frequently becomes the duty of the courts in construing statutes to limit their operation so that they shall not produce absurd, unjust, or inconvenient results not contemplated or intended. A case may be within the letter of the law and yet not within the intent of the law-makers, and in such a case a limitation or exception must be implied. (*L. S. and M. S. R. R. Co.* v. *Roach*, 80 N. Y., 339, 344.)

Very pertinently these observations are applicable to the construction of this statute and can be properly adopted in disposing of the case before us. The justice's return states that it contains all the evidence given on the trial, and for the reason it does not appear that the quantity of coal-tar and other refuse material thrown into the stream by the defendant from its factory is destructive to the life or disturbing to habits of fish, we hold that the plaintiff failed to prove a violation of the statute in this instance.

Judgment should be affirmed, with costs.

SMITH, P. J., not voting.

HARDIN, J. :

I concur in the opinion of brother BARKER. This being a penal action the plaintiff should present clear and cogent evidence to bring his case clearly and completely within the letter and spirit of the statute. Because he did not make out his case according to such requirements of the rule in penal actions the judgment was properly reversed by the County Court.

Judgment of County Court affirmed.